PUBLIC CITIZEN, et al., Petitioners,

v.

Otis R. BOWEN, Secretary, Department of Health and Human Services, et al., Respondents,

Cosmetic, Toiletry and Fragrance Association, Halogenated Solvents Industry Alliance, Intervenors.

No. 86–1494.

United States Court of Appeals, District of Columbia Circuit.

Nov. 20, 1987.

Katherine A. Meyer, William B. Schultz and Alan B. Morrison, Washington, D.C., were on the brief for petitioners.

Richard K. Willard, Asst. Atty. Gen., Robert J. Cynkar, Deputy Asst. Atty. Gen., John R. Fleder, Douglas N. Letter, Jacqueline H. Eagle, Attorneys, Dept. of Justice, Washington, D.C., Thomas Scarlett, Chief Counsel and Richard E. Geyer, Associate Chief Counsel, Food and Drug Admin., Rockville, Md., were on the brief for respondents.

Peter Barton Hutt, Robert M. Sussman, Ellen J. Flannery and Bruce N. Kuhlik were on the brief for intervenor, Cosmetic, Toiletry and Fragrance Ass'n.

W. Caffey Norman, III and Joseph P. Esposito, Washington, D.C., were on the brief for intervenor, Halogenated Solvents Industry Alliance.

Before BUCKLEY and WILLIAMS, Circuit Judges, and AUBREY E. ROBINSON, Jr.,* Chief Judge.

Opinion PER CURIAM.

PER CURIAM.

Petitioner Public Citizen seeks judicial resolution of the question whether the Food and Drug Administration, once it has found a food additive to cause cancer in man or animals, may nonetheless approve it as safe for use on the basis of a "quantitative risk assessment" establishing that its use poses only a trivial health risk. The food additive here at issue is methylene chloride, used by some firms to decaffeinate coffee. It is also used in cosmetics, primarily as an ingredient in hair sprays; the entanglement of food additive regulation with cosmetic regulation has created a good deal of confusion, discussed (if not fully unravelled) below. Interesting as we find the legal question, we have no jurisdiction to resolve it. The FDA has produced no final order.

* Of the United States District Court for the District of Columbia, sitting by designation pursu-ant to 28 U.S.C. § 292(a).

Twenty years ago the FDA found methylene chloride safe for use in decaffeination at levels not exceeding 10 parts per million (ppm), 32 Fed.Reg. 12,605 (1967), codified at 21 C.F.R. § 173.255(e) (1987), thus enabling manufacturers to use it for that purpose. *See* 21 U.S.C. § 348(a) (1982) (deeming a food additive unsafe for use unless the FDA has issued a regulation finding it to be safe). If there was any pre–1985 regulatory activity with respect to methylene chloride's cosmetic uses, the parties have not brought it to our attention.

Later studies led the FDA to believe that methylene chloride was a carcinogen. It went on to assess the resulting risks for both decaffeination and cosmetic uses. As to the cosmetic uses, it found that methylene chloride posed risks ranging from a one-in–100 lifetime risk for a hair-care specialist, to perhaps a one-in–10,000 lifetime risk for other users, depending upon certain assumptions. 50 Fed.Reg. 51,551, 51,-553 (1985). Accordingly, it filed a notice of proposed rulemaking on December 18, 1985, proposing to classify any cosmetic containing methylene chloride as "adulterated" within the meaning of 21 U.S.C. § 361(a). *Id.* at 51,558. Such a rule would ban its use for that purpose.

In the same notice of proposed rulemaking, the FDA addressed the risks entailed by use of methylene chloride for decaffeination. It expressed the results of the risk assessment both as an "upper bound" on risk, calculated in terms of use at the 10 ppm ceiling, and as an estimate based on levels of actual use by the primary manufacturing user at .1 ppm. Users of large amounts of decaffeinated *brewed* coffee would, according to the assessment, be exposed to a one-in-one-million lifetime risk at the upper bound, a one-in–100–million lifetime risk at actual use levels. Users of decaffeinated *instant* coffee would suffer a one-in–2.5–million lifetime risk at the upper bound, a one-in–250–million lifetime risk at actual use levels. 50 Fed.Reg. 51,-551, 51,555 (1985). By way of comparison, we note that a one-in-a-million lifetime risk is also posed by consuming one peanut, with aflotoxin at the FDA's maximum permissible level, once every 250 days. *See*

*Public Citizen v. Young*, 831 F.2d 1108, 1111 (D.C.Cir.1987).

The FDA then proceeded to consider whether under these circumstances the food additive Delaney Clause, 21 U.S.C. § 348(c)(3)(A) (1982), required it to revoke its listing of methylene chloride as a decaffeinating agent. That clause states that

no additive shall be deemed to be safe if it is found to induce cancer when ingested by man or animal, or it is found, after tests which are appropriate for the evaluation of the safety of food additives, to induce cancer in man or animal. . . .

A literal reading would indicate such a necessity. On the basis of its quantitative risk assessment, however, the FDA rejected that reading. In the notice of proposed rulemaking in which it proposed to ban methylene chloride for cosmetic purposes, it stated that, because of the low level of risk, it would maintain the food additive listing, *i.e.*, it would take no action on the decaffeination front. 50 Fed.Reg. at 51,-558.

The notice of proposed rulemaking of course initiated an opportunity for parties to comment. The FDA once extended the comment period at the request of persons wishing to comment on both decaffeination and cosmetic uses, 51 Fed.Reg. 6494 (February 24, 1986). After its close, the agency received four new studies, questioning the view that methylene chloride is a human carcinogen and calling for review of the agency's positions on its decaffeination and cosmetic uses. It then reopened the comment period in order to permit comment on these. 51 Fed.Reg. 43,935 (December 5, 1986). This generated over 1000 pages of further comment, again relating to both uses. The agency is presently reviewing the data and argument produced by its invitations to comment. The uncontested affidavit of the FDA's Associate Commissioner for Regulatory Affairs informs us that its Center for Food Safety and Applied Nutrition has prepared a draft document addressing the issues, but the agency itself has reached no decision. *See* Respondents' Brief, Addendum A.

The 1985 notice, even without the later developments, bore considerable indicia of non-finality: the absence of any pending request that the FDA consider the matter, the location of the statement in a notice of *proposed* rulemaking, and the statement's consisting solely of an expression of intent not to do anything.[1]

In any event, the later proceedings clearly deprived the 1985 notice of any finality that it may have enjoyed. The notice by no means proposed any rule for decaffeination uses of methylene chloride, so it is a little awkward to view the later (and presently ongoing) activity as simply the comment phase of a garden-variety rulemaking. It must, however, be regarded as at least the equivalent of proceedings on a motion for reconsideration. *Cf.* 21 C.F.R. § 10.25(b) (1987) (referring to agency's intent to ask for dismissal of court actions relating to any issue "which, if it has previously been determined, the agency concluded should be reconsidered and subject to a new administrative determination"). Regardless of characterization, the present non-finality is clear.

The agency's current inquiries could have any number of outcomes. (1) The FDA might find methylene chloride unsafe for decaffeination use and initiate proceedings under 21 U.S.C. § 348(h) to revoke its listing. If this eventuated in repeal of the listing, it would moot the present petition. (2) If the only positive tests were inhalation studies, the FDA might view them as neither involving "ingest[ion]" nor appropriate for the evaluation of food additives. Under this scenario, methylene chloride would not trigger the Delaney Clause, and the legal issue that petitioners wish adjudicated would disappear. (Petitioners note that they would contest any such view of inhalation studies, *see* Petitioners' Reply Brief at 10–11 n. 4, but that prospect neither negates it as a possible outcome nor renders it

identical to the issue as to which petitioners claim there is a final order.) (3) The FDA might revise its risk assessments; the levels of risks found might affect resolution of petitioners' primary legal claim. Given this great range of outcomes, the 1985 notice cannot under the present circumstances be considered final.

Petitioners seem to claim finality for the 1985 notice by denying that there is any on-going proceeding at all with respect to the use of methylene chloride for coffee. First, they note that the proper way for conducting a proceeding to repeal the 1967 listing is agency action under 21 U.S.C. §§ 348(h), 371(e) (1982), a point on which respondents concur. Such action is concededly not now taking place. But the absence of proceedings under those sections obviously does not mean nothing is happening, nor does it transform the 1985 notice into the sort of order in which such formal proceedings culminate and of which we have review jurisdiction under 21 U.S.C. § 371(f). What we now have is a proceeding with the potential of evolving into more formal action. (We note that the FDA has procedures by which citizen petitioners can trigger such proceedings, or at least secure a final agency decision not to proceed with them. *See* 21 C.F.R. §§ 10.25(a), 171.130 (1987)).

Petitioners' second argument against the reality of the present activity is that it has borne the legend "Cosmetics; Proposed Ban on the Use of Methylene Chloride as an Ingredient of Aerosol Cosmetic Products." *See* 50 Fed.Reg. 51,551; 51 Fed. Reg. 6494; 51 Fed.Reg. 43,935. Thus, they say, it cannot relate to the use of methylene chloride for decaffeination. But even if we were persuaded that the FDA was guilty of misbranding, it would not follow

---

1. If the 1985 notice were final and reviewable, the proper court for review might well be a district court, pursuant to 5 U.S.C. § 704 (1982) (authorizing review in a district court for "final agency action for which there is no other adequate remedy in a court"). *But see Telecom-* *munications Research & Action Center v. FCC,* 750 F.2d 70, 78–79 (D.C.Cir.1984). As plaintiffs started this action in district court, which transferred it here, we might order it transferred back if later developments did not, as developed below, plainly deprive the 1985 notice of any finality.

that the 1985 notice was—or remained—a final decision.

In motion papers, petitioners alluded to the possibility of making a claim under 5 U.S.C. § 706(1) (1982) that they had been harmed by the FDA's having "unreasonably delayed" agency action. *See* "Opposition to Respondents' Motion to Dismiss," October 30, 1986, at 10. In the nature of things, obviously, want of finality in the conventional sense cannot be a bar to such a claim. *Public Citizen Health Research Group v. Commissioner, FDA*, 740 F.2d 21, 30–32 (D.C.Cir.1984). In fact, however, their briefs assert no such claim.

In reference to the claims made by petitioners, there is no final decision. Accordingly, the petition is

*Dismissed.*